UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID EARL RAY GALLEGOS,<br><br>                Plaintiff,<br>    v.<br><br>PETER L. MAXSON JR. et al.,<br><br>                Defendant. | CASE NO. 2:23-cv-01257-DGE-DWC<br><br>ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 38) |

## I    INTRODUCTION

This matter comes before the Court on the Report and Recommendation of Judge Christel, which recommends that the case be set for trial. (Dkt. No. 38.) For the foregoing reasons, the Court finds there is no genuine dispute of a material fact and DISMISSES the remaining claims on summary judgment.

## II    BACKGROUND

**A. Procedural History**

1       Plaintiff, who is currently incarcerated at Monroe Correctional Complex and proceeding
2  *pro se* and in *forma pauperis*, filed his Complaint on September 13, 2023.  (Dkt. No. 7.)  The
3  case was referred to Judge Christel.  Plaintiff alleged that his First, Eighth, and Fourteenth
4  Amendment rights were violated by Officer Peter Maxon, Sargent Michael Silva, and Brittany
5  Richards (collectively, "Defendants").  (*Id*.)  Defendants moved to dismiss Plaintiff's claims
6  (Dkt. No. 12) and Judge Christel recommended that the First and Fourteenth Amendment claims
7  be dismissed and all claims against counselor Richards be dismissed.  (Dkt. No. 17.)  The Court
8  affirmed Judge Christel's Report and Recommendation, and dismissed Plaintiff's First and
9  Fourteenth Amendment claims and all claims against Richards.  (Dkt. No. 20.)  Accordingly,
10 only Plaintiff's deliberate indifference claims against Maxon and Silva survived the
11 government's first motion.

12      Defendants subsequently moved for summary judgment on the Eighth Amendment
13 claims against Silva and Maxon.  (Dkt. No. 31.)  Judge Christel found Defendants failed to show
14 no genuine issue of material fact remained in the case and therefore recommended that the Court
15 deny the motion for summary judgment.  (Dkt. No. 38 at 1.)  Defendants subsequently filed
16 objections to the Report and Recommendation.  (Dkt. No. 39.)  Plaintiff responded.  (Dkt. No.
17 41.)  The matter is now ripe for *de novo* consideration by this Court.

18      **B.  Factual Background**

19      Plaintiff is diagnosed with schizoaffective disorder.  (Dkt. No. 32-1 at 7.)  He is a
20 survivor of childhood sexual abuse.  (*Id*. at 10; Dkt. No. 5 at 5.)  Beginning in November of
21 2022, Plaintiff stopped taking his psychiatric medication, and began experiencing auditory
22 hallucinations.  (Dkt. No. 32-1 at 9.)  Around this time, Plaintiff wrote several kites to a
23 counselor to report crimes against him—specifically, sexual abuse that had taken place during
24

his childhood and violations of the Prison Rape Elimination Act ("PREA") that he believed to be ongoing. On December 1, 2022, Plaintiff sought out Maxon in his office to make a clarification to one of the kites and told him he was concerned about his safety regarding sexual abuse and misconduct in prison. (Dkt. No. 32-1 at 8–9.) At this time, Plaintiff was hearing "voices" talk about parts of his body, believed that women were watching him shower, and believed that people were touching him and telling others to approach him sexually. (*Id*. at 8–10.)

On December 6, 2022, Plaintiff noticed that a counselor other than the counselor he had addressed the kites to had responded to his kites and disregarded his reports. (Dkt. No. 32-1 at 14; Dkt. No. 5 at 5.) He then went to Maxon's office with the kite forms to complain that counselors were answering kites that were not addressed to them. (Dkt. No. 32-1 at 8; Dkt. No. 34 at 9.) Silva opened the door and asked what Plaintiff's emergency was. (Dkt. No. 32-1 at 13; Dkt. No. 34 at 9.) Plaintiff informed them that he believed that different counselors were answering his kites and disregarding his PREA reports. (Dkt. No. 32-1 at 13; Dkt. No. 34 at 9.) Silva reminded Plaintiff that he was only supposed to knock on the door in an emergency; Plaintiff said that this was an emergency to him, and that it was "regarding his safety" because he "didn't know who was watching [him] and who was talking to [him]." (Dkt. No. 32-1 at 15; Dkt. No. 34 at 9.) Plaintiff felt that the prison had "stopped communication of [his] filing sexual misconduct [reports]," thereby placing his safety "in jeopardy." (Dkt. No. 32-1 at 17.) Plaintiff became very distressed when Maxon tried to explain to him what an emergency meant within the context of when inmates should knock on the door; Plaintiff asked Maxon whether being a victim of sexual abuse in prison was an emergency. (Dkt. No. 32-1 at 9; Dkt. No. 34 at 9.) The confrontation escalated; Plaintiff raised his voice and began using gang signs, at which point he was told to lock down in his assigned cell. (Dkt. No. 32-1 at 9; Dkt. No. 34 at 9.)

Plaintiff returned to his cell, where he remained acutely distressed. (Dkt. No. 32-1 at 9.) A prison counselor attempted to talk to him through the door, but he did not want to speak with her and told her to "get away" from him. (Dkt. No. 32-1 at 9, 11.) While in his cell, Plaintiff removed his clothes and attempted to harm himself in response to the voices he was hearing. (Dkt. No. 32-1 at 11; Dkt. No. 34 at 9.) Silva then came up to his cell window and asked Plaintiff whether he was ok; Plaintiff stated that he was not. (Dkt. No. 32-1 at 11; Dkt. No. 34 at 9.) Silva then directed Officer Doug McLane to stand by Plaintiff's door to make sure he did not attempt to harm himself while he went back to the officer's desk. (Dkt. No. 34 at 10.) Within a few hours, Plaintiff was examined by a nurse. (*Id*. at 11.) The nurse documented that he was experiencing auditory hallucinations and needed to be transferred for medical care due to his reports of not taking his psychiatric medications—but that he was not physically injured beyond a swollen hand and jaw area. (*Id*.)

### III   LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact." *Celotex Corp. v. Catrett* 106 S.Ct. 2548, 2552 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if there is sufficient evidence on the record for a reasonable trier of fact to return a verdict for the nonmoving party. *Id*. The party moving for summary judgement bears the initial burden of identifying the portions of the pleadings, discovery, and affidavits that show the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). If the issue is one in which the

opposing party bears the burden of proof at trial, the moving party must only point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

If the moving party meets this initial burden, the nonmoving party must point to specific facts in the record showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *T.W. Elec. Service Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("[T]he nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgement."). If the nonmoving party fails to put forth such evidence, then the moving party is entitled to judgement as a matter of law. *Celotex*, 477 U.S. at 323. In determining whether a genuine dispute of material fact exists, "[t]he deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

## IV    DISCUSSION

Judge Christel concluded that Defendants' motion for summary judgement was not supported by sufficient evidence, as Defendants failed to submit *any* evidence beyond a portion of Plaintiff's deposition testimony. (*See* Dkt. No. 38 at 5 n.2). However, Plaintiff states all the exhibits he submitted are authenticated and were produced by defendants. (Dkt. No. 34 at 24.) Accordingly, the Court concludes there is evidence in the record that supports granting summary judgment.

"To prove a violation of the Eighth Amendment, a plaintiff must show that the defendant: (1) exposed [him] to a substantial risk of serious harm; and (2) was deliberately indifferent to [his] constitutional rights." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "When assessing whether a plaintiff was exposed to a substantial risk of serious harm, we may look to whether the risk 'is not one that today's society chooses to tolerate.'" *Id*. (citing *Helling*

*v. McKinney*, 509 U.S. 25, 36, (1993)). "The plaintiff then must prove that the defendant was deliberately indifferent to [his] health and safety or serious medical needs." *Id*. (citing *Farmer v. Brennan*, 511 US 825, 837 (1994)). With specific respect to "deliberate indifference," the Supreme Court has held that a "prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 US 825, 837 (1994).

Here, there is not sufficient evidence on the record for a reasonable trier of fact to return a verdict for Plaintiff on his deliberate indifference claims. On December 1, 2022, Plaintiff spoke with Maxon to discuss his concerns about his "safety regarding sexual abuse and sexual misconduct." (Dkt. No. 32-1 at 8–9.) The record is void of any harm that may have occurred on December 1, 2022. On December 6, 2022, Plaintiff spoke with Maxon and Silva about kites he had sent to his counselor. (*Id*. at 12; *see* Dkt. No. 34 at 9–10.) After Plaintiff became visibly distraught and stated that his safety and health were in danger, he was sent to his cell and quickly visited by a counselor. (Dkt. No. 34 at 9–10.) After he turned the counselor away and engaged in self-harming behavior, an officer was stationed at his door to ensure he did not try to harm himself again. (*Id*. at 10.) Within a few hours, Plaintiff was examined by a nurse. (*Id*. at 11.) The record lacks any evidence Maxon and Silva acted deliberately indifferent on December 1 or 6, 2022. Ultimately, there is an "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

## V   CONCLUSION

Accordingly, the Court DISMISSES Plaintiff's remaining claims on summary judgement.

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 38) - 6

Dated this 26th day of March, 2025.

David G. Estudillo
United States District Judge

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 38) - 7